CASANUEVA, Judge,
Specially concurring.
Because I conclude that this case is controlled by United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), I agree that it must be affirmed. In reaching this determination, I also conclude that the affidavit submitted by the deputy sheriff was constitutionally defective because the facts as stated did not rise to the level of probable cause. Although the magistrate erred by issuing a search warrant for Mr. Edmonds’s residence, the search is saved by the Leon good-faith exception to the exclusionary rule.
An appellate court reviews the legal determination of probable cause de novo. Pagan v. State, 830 So.2d 792, 806 (Fla.2002). This review is limited by the four corners of the affidavit.
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court established that an issuing magistrate must examine all the circumstances set forth in the affidavit and make a common-sense decision whether there is a fair probability that contraband will be found in a particular place. In Pagan, 830 So.2d at 806, the Florida Supreme Court observed:
In determining whether probable cause exists to justify a search, the trial court must make a judgment, based on the totality of the circumstances, as to whether from the information contained in the warrant there is a reasonable probability that contraband will be found at a particular place and time.
Included among the factors the magistrate should consider are: the presence of ongoing criminal activity, the nature of the contraband or item being sought, the nature of the criminal activity, whether there is a continuing flow of information from an ongoing investigation, and the quantity of the drugs sought to be seized. Cruz v. State, 788 So.2d 375, 378 (Fla. 4th DCA 2001).
*682 With these analytical requirements in mind, I have examined the pertinent and critical factual allegations in the affidavit. First, the affiant states that an informant has indicated that Mr. Edmonds “possibly utilizes a safe-house or storage facility, somewhere in the near area of his residence” to store the thirty to sixty pounds of marijuana that he receives from the British Columbia area of Canada. The confidential informant provided this information on September 5, 2003. Clearly, this statement provides no basis to conclude that illegal drugs were in the residence either when the affidavit was signed on February 23, 2004, or at any previous time. However, the affidavit confirms that Mr. Edmonds had rented a storage unit for approximately eighteen months. On February 19, 2004, a.drug dog sniffed the exterior of a unit and alerted to the presence of drugs.
The residence is next mentioned in the context of a trash pull conducted there on November 6, 2003, two months after the initial information was received from the confidential informant. The affiant does not mention that an ongoing investigation during this period has led to any information pertaining to the residence. There is no mention of controlled buys or surveillance revealing extensive traffic or other conduct consistent with the sale or distribution of drugs. The affidavit does note that a small amount of marijuana was found in the trash. Unfortunately, the precise quantity was not set forth for the magistrate’s consideration. In Cruz, by comparison, the affidavit specifically identified both the nature and amount of quantity of the marijuana discovered in the trash pulls: “one suspect cannabis cigarette butt” and “less that one gram suspect cannabis pieces.” 788 So.2d at 376.
Slightly more than three months after the first trash pull, which was six months or more from the receipt of the confidential informant’s information, a second trash pull took place on February 12, 2004. A week later, law enforcement conducted a third trash pull. Several marijuana seeds were discovered in the second pull; on the third trash pull, numerous marijuana seeds and some pieces of marijuana leaves were found.
The affiant asserts that a search warrant is necessary to enter the residence because the officer believes that the premises are “currently being used to sell, store, distribute and conceal marijuana in violation of Florida State Statutes.” The affiant does not seek a warrant on the basis that the residents of the home were smoking marijuana inside. Had the issuing magistrate reviewed the affidavit’s facts for that claim, the magistrate would probably have concluded that there was no likelihood that marijuana would be found because it had gone up in smoke and any remains were discarded with the trash.
With regard to the claimed offenses of sale and distribution of marijuana, the contents of the affidavit fail to demonstrate that any packing, shipping, or distribution materials were found in the trash. Similarly, the affidavit reveals no evidence that anyone had sought drugs that were actually being stored, used, or distributed from the residence.
Furthermore, two trash pulls one week apart do not constitute a pattern of ongoing criminal activity. Even consideration of the trash pull occurring months earlier would not change the analysis or conclusion. In Denton v. State, 524 So.2d 495 (Fla. 2d DCA 1988), this court determined that conduct observed during intensive surveillance over four days constituted an ongoing pattern of criminal activity. Here, both intensity and duration of surveillance were lacking.
The facts within the four corners of this affidavit do not point to a reasonable probability that an amount of drugs consistent *683 with the sale, storage, or distribution of marijuana would be found at Mr. Ed-monds’ residence at the time the warrant authorized the search.
It is the magistrate’s responsibility to determine whether the officer’s allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate’s probable-cause determination or his judgment that the form of the warrant is technically sufficient.
Leon, 468 U.S. at 919, 104 S.Ct. 3405. Here, the error rests with the issuing magistrate [1] and not with the officer. A review of the entire record persuades me that the officer’s reliance on the magistrate’s probable cause determination was objectively reasonable. The purpose of the exclusionary rule is to deter police misconduct and not to punish judicial errors. Therefore, the Leon exception applies in this case.

. The trial court was not the issuing magistrate.